UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APRIL MITCHELL and K.M., *a minor,*
*by and through her mother April Mitchell,*

Plaintiffs,

Case No. 23-cv-400-pp

v.

P.O. RANDALL SMITH, *et al.,*

Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 22) AND DISMISSING CASE**

On March 28, 2023, the plaintiffs filed suit against several City of Racine police officers alleging that the defendants violated plaintiff Mitchell's and her daughter's constitutional rights during and after a traffic stop. Dkt. No. 1. The plaintiffs filed an amended complaint on August 24, 2023 identifying several additional police officers as defendants. Dkt. No. 16.

On July 5, 2024, the defendants moved for summary judgment on all claims. Dkt. No. 22. That motion has been fully briefed since October 28, 2024. Dkt. Nos. 23, 30, 31. The court will grant the defendants' motion and dismiss this case with prejudice.

**I. Evidentiary Matters**

Before reviewing the parties' proposed findings of fact, the court must address the objections to those filings. In their brief in opposition to summary judgment, the plaintiffs object to the defendants' proposed findings of fact,

1

"including all submitted videos, audio, documents, and related factual assertions," asserting that this evidence constitutes inadmissible hearsay and is unsupported by an affidavit based on personal knowledge. Dkt. No. 30 at 6. They argue that the defendants submitted their evidence via an affidavit from their attorney, who lacks personal knowledge regarding the documents, so the documents are inadmissible. Id. They also argue that Exhibits 1-10 are inadmissible even if supported by a proper affidavit because police reports are "hearsay documents created after the fact by police officers" and "are not normally admissible as substantive evidence." Id. (citing United States v. Wyatt, 437 F.2d 1168, 1170 (7th Cir. 1971)).

The defendants respond that although an attorney's affidavit is not technically sufficient to authenticate a document, a supplemental affidavit by an individual who can authenticate the document is permissible to cure the defect. Dkt. No. 31 at 3 (citing Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018)). They argue that documents provided to the opposing party during discovery—such as the body camera videos and police reports submitted here—generally are considered authenticated by virtue of that production. Id. (citing United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982)). The defendants state that they have submitted supplemental affidavits with their reply brief to cure any defect in authentication and characterize the plaintiffs' objection as unnecessarily challenging an error. Id. at 4.

The defendants argue that the evidence is not hearsay. Id. at 5. First, they contend that actions are not hearsay, so the video evidence showing those

2

actions cannot be hearsay. Id. Second, they argue that "[f]actual findings and corresponding entries in a police report that result from a police officer's own observation and knowledge are admissible as exceptions to the hearsay rule." Id. at 6 (citing Federal Rule of Evidence 803(8)). They argue that police reports are admissible as public records in the context of a civil case. Id. (collecting cases). As for the third-party statements contained in the police reports, body camera footage or dispatch audio, the defendants argue that these are not hearsay or are subject to hearsay exceptions such as the exception for statements of an opposing party. Id. at 7.

The defendants' evidence is properly authenticated. Not only is evidence produced in discovery implicitly authenticated, Brown, 688 F.2d at 1116 and Wajvoda v. Menard, Inc., Case No. 11-CV-393, 2015 WL 5773648, at *3 (N.D. Ind. Sept. 30, 2015) (citing Brown and other cases holding the same), but the defendants submitted supplemental affidavits from affiants with personal knowledge of the evidence at issue, see dkt. nos. 31-1, 31-2, 31-3. The court is satisfied that the evidence the defendants have submitted is properly authenticated. See Cehovic-Dixneuf, 895 F.3d at 932 (explaining that on summary judgment, authentication objections can be cured with a supplemental affidavit from the moving party).

Although it is true that "[a] party may not rely on inadmissible hearsay to avoid summary judgment," MMG Fin. Corp. v. Midwest Amusements Park, LLC, 630 F.3d 651, 656 (7th Cir. 2011), the evidence the defendants have submitted in support of their summary judgment motion either is not hearsay

3

or is subject to hearsay exceptions. In a civil case, records or statements of a public office (such as a police department) are excepted from the hearsay rule if they set out the office's activities describing factual findings from a legally authorized investigation. Fed. R. Evid. 803(8); See Daniel v. Cook County, 833 F.3d 728 (7th Cir. 2016) ("A report that combines such [third-party] statements with an investigator's on-scene observations and conclusions based on the sum of the evidence falls within the Rule 803(8) exception."); Salmi v. D.T. Mgmt., Inc., Case No. 02 C 2741, 2002 WL 31115581, at *3 (N.D. Ill. Sept. 23, 2002) ("Because this is a civil—not a criminal—matter, a police officer's statements of facts and observations in his report are admissible."). The plaintiffs have not presented any evidence challenging the trustworthiness or reliability of the police reports. The body camera footage is not hearsay to the extent it contains statements made by the plaintiff being offered by the defendants; a statement "offered against an opposing party" and "made by the party" are not hearsay under Fed. R. Evid. 801(d)(2). The same is true for the notes on the call activity report that relay statements by the plaintiff. The statements dispatch made via radio to officers about Kei'andre Mitchell's criminal history are not hearsay because the statements are not being offered for the truth of the matter asserted,[1] but for their effect on the listener—to show the reason officers decided to stop plaintiff Mitchell's vehicle and conduct an investigation into his

---

[1] The definition of hearsay is a statement that a declarant makes outside of the current trial or hearing and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

involvement with a shooting. All this evidence is admissible for purposes of summary judgment.

The plaintiffs also argue that the defendants failed to cite to their statement of facts in their memorandum supporting their motion for summary judgment. Dkt. No. 30 at 8. They say that the defendants' brief does not list any facts or cite to any defendant's affidavit or testimony. Id. The plaintiffs contend that they cannot identify the evidence underlying a particular fact due to the lack of citations in the brief. Id. at 8–9. They assert that because the defendants have not carried their burden to support their arguments with admissible evidence, the court must deny the summary judgment motion. Id. at 9. The defendants did not reply to this argument.

Federal Rule of Civil Procedure 56(c) says that a party asserting that a fact cannot be, or is, genuinely disputed must cite to the parts of the record that support that assertion. But Rule 56(c)(3) leaves to the court's discretion whether to consider materials that are not cited. This court's local rules require only that a party file a proposed statement of material facts; it does not specify that the party must cite those facts in its brief. Civil L.R. 56(b)(1). Although it is true that the defendants did not include in their brief citations to their proposed findings of fact, neither the national nor local rules require a court to deny a summary judgment motion on this basis. "[T]his court has discretion to apply its local rules strictly or to grant parties some leeway." Higgins v. Tru Serv. Grp., Inc., Case No. 21-CV-1021, 2023 WL 1821003, at *2 (E.D. Wis. Feb. 8, 2023) (citing Stevo v. Frasor, 662 F.3d 880, 886-87 (7th Cir. 2011)).

5

Would it have been much easier for this court (and presumably the plaintiffs) to analyze the defendants' arguments had their brief cited to proposed findings of fact? Yes. Should the defendants have included such citations? Yes. But rather than denying the motion on that basis, the court will consider the factual statements made in the parties' proposed findings of fact to determine whether those facts are disputed. See Haymer v. Racine Fam. YMCA, Case No. 20-CV-1846, 2022 WL 2238891, at *1 n.1 (E.D. Wis. June 22, 2022) (relying solely on factual assertions in parties' proposed findings of fact where defendant failed to include citations to the same within its brief). The court will not consider any statements of fact in the defendants' brief that are not contained in the proposed findings of fact or that otherwise are unsupported by the evidence they submitted.

## II.     Background

Because the plaintiffs chose to challenge the admissibility of the defendants' documentary evidence, in many instances, the plaintiffs do not admit or deny the underlying factual assertion. The failure to admit or deny a fact constitutes an admission for purposes of summary judgment. Curtis v. Costco Wholesale Corp., 807 F.3d 215, 219 (7th Cir. 2015) (affirming trial court's decision to deem facts admitted based on similar local rule where nonmoving party only responded with objections); Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 818 (7th Cir. 2004) (district court was entitled to disregard responses to statements of fact that did not include an admission or denial). Even if the court were to construe the plaintiffs' objections as denials,

6

their responses would be improper under this court's Local Rules because they did not include "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon" to support their denials. Civil L.R. 56(b)(2)(B)(i) (E.D. Wis.). Because the court has overruled the plaintiffs' objections, it deems any statement of fact that the plaintiffs did not explicitly deny (and which is supported with evidence in the record) as admitted for the purposes of this motion.

Against that backdrop, the following facts are undisputed unless otherwise noted.

A.    Factual Background

On December 23, 2022, Officer Caleb McKenzie was dispatched to 904 Villa Street, Racine, Wisconsin, after a 16-year-old woman had been shot in the chest. Dkt. No. 29 at ¶18. After McKenzie arrived on scene, he attempted to render aid, but the woman died on the scene. Id. at ¶¶19–20. The father of the deceased arrived and informed the officers that the woman was upstairs at the time she was shot; he also informed the responding officers that he saw Kei'andre Mitchell (not a party to this case) running down the staircase and out the front door, shouting that the victim shot herself. Id. at ¶¶21-22.

Officers treated the incident as an active crime scene because of the nature of the death and because Kei'andre Mitchell had fled the scene. Id. at ¶23. Officers learned over the radio that Kei'andre Mitchell recently had been involved in a shooting in Kenosha and had been reported in connection to gang activity and multiple "shots fired" and "man with gun" calls. Id. at ¶¶25–26.

7

Officers searched for Kei'andre Mitchell in the immediate area around 904 Villa Street. Id. at ¶23. They determined by means of an internal police database that Kei'andre Mitchell's mother was plaintiff April Mitchell,[2] that she lived at 1646 State Street and that she owned a gray 2012 Audi Q5. Id. at ¶28. Defendant Sergeant Joseph Stevens responded to 1646 State Street to observe the home. Id. at ¶29.

The plaintiff was not present at the scene of the shooting. Dkt. No. 31-4 at ¶70. The plaintiff states that after Kei'andre Mitchell came home and told her what happened at his girlfriend's house, she began to drive him back to the house so he could talk to the police. Id. at ¶71. Sergeant Stevens observed an unidentified individual exiting the residence at 1646 State Street and entering what appeared to be an Audi. Dkt. No. 29 at ¶30. Stevens observed the individual drive away from the residence. Id. at ¶31. Stevens reported the direction that the vehicle was headed; Officer Donald Rybarik responded to that area and observed an Audi that matched the description of the vehicle and bore the plaintiff's license plate number. Id. at ¶32. Rybarik attempted to perform a traffic stop on the vehicle, but the vehicle continued to drive for one and a half blocks until it stopped at a nearby gas station.[3] Id. at ¶33. Kei'andre Mitchell and the plaintiff were in the vehicle. Id. at ¶35.

---

[2] The court will refer to plaintiff April Mitchell as "the plaintiff," plaintiff K.M. by her initials and non-party Kei'andre Mitchell by his full name.

[3] In their response to the defendants' proposed findings of fact, the plaintiffs responded to this assertion by writing "DENY?" Dkt. No. 29 at ¶33.The court is unsure whether the plaintiffs intended to deny this fact, but because the

The defendants assert that during the traffic stop, officers were concerned that Kei'andre Mitchell would continue to flee. Id. at ¶36. During the traffic stop, officers drew firearms and pointed them at the vehicle and its occupants. Id. at ¶37. Officers detained Kei'andre Mitchell and the plaintiff for questioning about their potential involvement in the shooting and flight from the scene. Id. at ¶38. Defendant Officers Kyle Knobloch and Randall Smith detained the plaintiff upon her getting out of the vehicle. Id. at ¶39. Knobloch and Officer Ryan Balchitis detained Kei'andre Mitchell upon his exit from the vehicle. Id. at ¶40. Officers transported Kei'andre Mitchell to the Racine Police Department for further investigation. Id. at ¶41.

At some point while the plaintiff was detained and in transport to the Racine Police Department, she informed officers that there was a one-year-old child alone in her home. Id. at ¶43. Officers were concerned for the child due to the very low temperature and wind chill that night, so they determined that it would be prudent to transport the plaintiff to her home at 1646 State Street to care for, or to arrange for the care of, the child. Id. at ¶¶44–45, 47. After arriving at 1646 State Street, Stevens observed movement—specifically, the blinds moving—inside the home, though the plaintiff had stated that no one was home except the one-year-old child. Id. at ¶48. Defendant Officers Randall Smith, Eric Prybylski and Adam Amundsen unlocked the door and entered the plaintiff's home to locate the child. Id. at ¶¶49–50. After entering the home,

---

plaintiffs did not support the denial with a citation to record evidence, the court will deem it admitted for purposes of summary judgment.

officers learned that there were two other children present, including plaintiff K.M. Dkt. No. 29 at ¶52.

The defendants state that after arriving at 1646 State Street, the plaintiff became verbally combative toward officers, "repeatedly attempted to pull away from officers, screamed in officers' faces, and kicked at objects." Id. at ¶¶46, 51. The plaintiff disputes this characterization. Id. at ¶46. But the body camera footage shows that at times she raised her voice, objected to officers potentially searching the house and stated that she was upset and uncomfortable because she was placed in handcuffs. See Dkt. No. 22-4 at Exhibit 14, 18:00-19:30, 23:30-25:50. The plaintiff also raised her voice while directing the children present in the house to record the officers and not to speak. Id. at Exhibit 11, 56:09-58:40.

Upon realizing that multiple children in need of care were in the home, and because they believed Kei'andre Mitchell had fled into this house after the incident at 904 Villa Street, officers determined that all individuals would be held in the living room so that investigators could respond there to question the plaintiff regarding "her role in Kei'andre Mitchell's flight from 904 Villa Street." Id. at ¶53. The defendants did not allow the plaintiff to leave. Dkt. No. 31-4 at ¶80. The plaintiff asked for the handcuffs to be removed, but the defendants refused to remove her handcuffs. Id. at ¶81. Officers did not remove the plaintiff's handcuffs because of her behavior, including her active and passive resistance toward officers. Dkt. No. 29 at ¶54. Several times the plaintiff asked why she was arrested and what the defendants were doing in

10

her house. Dkt. No. 31-4 at ¶82. The plaintiffs assert that K.M. was afraid and extremely upset that they were being held in custody at their home. Id. at ¶83.

Officer Prybylski searched the immediate vicinity in and around the couch where all the individuals were seated and while he waited for investigators to arrive. Dkt. No. 29 at ¶55. Officer Amundsen and another officer performed a protective sweep to ensure that no other individuals were within the home. Id. at ¶56. Amundsen and another officer entered areas in the home that could conceal an individual, but they did not search any area or location that could not conceal an individual. Id. at ¶57. Other than to perform the protective sweep, officers searched only the "portions of the home upon [the plaintiff's] verbal consent to do so." Id. at ¶62. Officers searched for Kei'andre Mitchell's clothing in only those areas of the house that were identified by the plaintiff as areas where Kei'andre Mitchell may have left clothing and only with the plaintiff's permission to do so. Id. at ¶63. The plaintiff also gave officers her verbal permission to search her vehicle. Id. at ¶64.

When the plaintiff became more compliant, Sergeant Stevens adjusted her handcuffs by adding a second pair of cuffs in sequence ("doubled-up"), which allowed the plaintiff more freedom of motion and flexibility. Id. at ¶58. The plaintiff remained in doubled-up handcuffs throughout her detention, which the defendants assert was due to her "erratic behavior." Id. at ¶59.

Officers detained the plaintiff in her home for approximately five hours while investigators investigated the scene at 904 Villa Street and interviewed Kei'andre Mitchell. Id. at ¶¶60–61. Officers also questioned the plaintiff about

11

her knowledge of the shooting. Id. at ¶65. At approximately 6:00 a.m., the defendants released the plaintiff and her daughter from custody and left their home. Dkt. No. 31-4 at ¶85.

B.    Procedural Background

In the original complaint, the plaintiffs named the City of Racine as a defendant and asserted a claim against the city for indemnification. Dkt. No. 1 at 4–5. The defendants moved to dismiss the city, arguing that the plaintiffs had not stated a separate claim against it and that they had asserted only a claim for indemnification under Wis. Stat. §895.46, which is not a separate cause of action. Dkt. No. 11. The plaintiffs did not oppose the motion. at an August 15, 2023 scheduling hearing, the court granted the motion to dismiss because Wis. Stat. §895.46 does not provide a separate cause of action for indemnification; the court concluded that the plaintiffs did not need to plead indemnification for the city to be required to indemnify a defendant in the event of an adverse judgment. Dkt. No. 15 at 1. Because the plaintiffs had made no substantive allegations against the City of Racine, the court dismissed the city as a defendant. Id.

The plaintiff then filed an amended complaint naming additional officers as defendants and removing the indemnification claim against the city. Dkt. No. 16. The amended complaint alleges four[4] violations of 42 U.S.C. §1983: (1)

---

[4] Both Count I and Count III in the amended complaint are titled "seizures." Based on the factual allegations in those counts, the court construes Count I as relating to the arrest during the initial traffic stop and Count III as relating to the subsequent detention in the plaintiffs' home.

12

the defendants falsely arrested the plaintiff during a traffic stop; (2) the defendants used excessive force against the plaintiff; (3) the defendants unlawfully detained the plaintiff in her home; and (4) the defendants unlawfully seized K.M. Id. at 1–6. The plaintiffs seek compensatory and punitive damages. Id. at 6.

## III.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the

13

nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

## IV. Motion for Summary Judgment (Dkt. No. 22)

The defendants moved for summary judgment on all claims, arguing that (1) the defendants had probable cause to detain the plaintiff during a traffic stop; (2) the defendants did not use force against the plaintiff; (3) the defendants lawfully entered the plaintiff's home and did not unreasonably detain the plaintiffs while there; (4) K.M. was neither searched nor seized; (5) there is no evidence of malicious intent to support a punitive damages claim; and (6) the defendants are entitled to qualified immunity. Dkt. No. 23.

### A.    Count I: False Arrest/Seizure During the Traffic Stop

#### 1.    *Parties' Arguments*

The defendants argue that they did not violate the plaintiff's constitutional rights when they stopped her vehicle and detained her because officers had probable cause to conduct the stop. Dkt. No. 23 at 5–6. The

14

defendants assert that they had reasonable suspicion that the plaintiff was involved in the commission of a crime because she was driving a vehicle containing an individual associated with a suspicious death. Id. at 7. The defendants contend that at the time, it was unclear how Kei'andre Mitchell was involved in the shooting, whether he was armed or whether he was intending to flee law enforcement, and that officers had probable cause to conduct the stop based on the totality of these circumstances. Id. at 8–9. They say that officers did not know whether the plaintiff was assisting Kei'andre Mitchell in fleeing the scene of a crime, so detaining her for investigatory purposes was reasonable. Id. at 9–10. The defendants also argue that the court should dismiss this claim against defendants Stevens, Spaulding, Prybylski, Amundsen and Michael Smith because they were not present during the stop and so could not be liable for any associated §1983 violation. Id. at 6.

The plaintiffs respond that the officers lacked probable cause to place the plaintiff in custody. Dkt. No. 30 at 12. Although they concede that the officers had reasonable suspicion to conduct an initial stop and briefly detain the plaintiff, they argue that five hours was an unreasonable length of time to detain her. Id. at 11–12. The plaintiffs then argue that there were no facts to justify detaining the plaintiff because the defendants based their arrest on "unknowns and speculation." Id. at 12. They contend that Kei'andre Mitchell running away from the scene of a self-inflicted shooting did not give rise to a reasonable suspicion that the plaintiff was involved in criminal activity. Id. at 13. They argue that there are no facts to suggest that the plaintiff was

15

"intentionally aiding" Kei'andre Mitchell in the commission of a crime, so there was no probable cause to arrest her. Id.

The defendants reply that the plaintiff was not detained for an unreasonable amount of time. Dkt. No. 31 at 8. They argue that detentions of less than forty-eight hours are "presumptively reasonable" and that the plaintiff has not presented facts showing that the five-hour detention was unreasonable. Id. They contend that the officers had probable cause to detain the plaintiff, and that she was held only for the time it took officers to question various witnesses regarding the shooting. Id. at 9.

        2.   *Analysis*

Section 1983 of Title 42 allows a plaintiff to sue a "person" who violates her constitutional rights "under color of" state law. The statute "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir.1997) (quoting Livadas v. Bradshaw, 512 U.S. 107, 132 (1994)). In §1983 cases, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

To state a claim under §1983, the plaintiff must allege that the defendant "personally participated in or caused the unconstitutional actions." Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (citing Duncan v. Duckworth, 644

16

F.2d 653, 655 (7th Cir. 1981)). The undisputed facts show that defendants Stevens, Spaulding, Prybylski, Amundsen and Michael Smith were not present during the traffic stop and so cannot be held liable for any constitutional violation that occurred during that traffic stop. The court will grant summary judgment in favor of defendants Stevens, Spaulding, Prybylski, Amundsen and Michael Smith on Count I.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV; Alexander v. McKinney, 692 F.3d 553, 558 (7th Cir. 2012) (citing Albright v. Oliver, 510 U.S. 266, 275 (1994) (plurality opinion)). As the Seventh Circuit has stated:

> To prevail on a Fourth Amendment claim for false arrest, [a plaintiff] must establish that [she] was arrested without probable cause. *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022). "Probable cause for an arrest provides an absolute defense to a false arrest claim." *Id.* (citing *Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021)). And "[p]robable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted). The inquiry is "purely objective," and "the officer's subjective state of mind and beliefs are irrelevant." *Id.* "Moreover, the court's inquiry is limited to what the officer knew at the time of the arrest and not what has been gained from hindsight." *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012) (citation omitted). This knowledge is assessed from the perspective of an objectively reasonable police officer. *Abbott*, 705 F.3d at 714 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 . . . (2003)).

Johnson v. Myers, 53 F.4th 1063, 1068 (7th Cir. 2022).

Because the alleged false arrest arose out of a traffic stop, the court will first consider whether the defendants had reasonable suspicion to stop the

17

plaintiff's vehicle. "Although an officer does not need probable cause to conduct an investigatory stop, the brief detention must be based on reasonable suspicion that the stopped individual has or is about to commit a crime." United States v. Booker, 579 F.3d 835, 838 (7th Cir. 2009). To determine whether the stop was lawful, the court considers: "(1) whether the police were aware of specific and articulable facts giving rise to reasonable suspicion; and (2) whether the degree of intrusion was reasonably related to the known facts." United States v. Bullock, 632 F.3d 1004, 1012 (7th Cir. 2011) (quoting United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994)). An investigatory stop is proper "if the officer making the stop is 'able to point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity." Id. at 1224 (quoting Terry, 392 U.S. at 21–22). "Reasonable suspicion is a lower threshold than probable cause and does not deal with hard certainties, but with probabilities." Booker, 579 F.3d at 839 (quotation omitted). It "requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." Gentry v. Sevier, 597 F.3d 838, 845 (7th Cir. 2010) (quotations omitted).

The defendants had reasonable suspicion to stop the plaintiff's vehicle. The undisputed facts show that officers arrived at the scene of a fatal shooting and a witness informed them that Kei'andre Mitchell had run from the scene of the shooting. Officers learned that Kei'andre Mitchell had a history of involvement in other shootings. They determined that the plaintiff was Kei'andre Mitchell's mother, where she lived and the car she drove, then

18

observed the plaintiff's car leaving her home shortly after the shooting. These facts are sufficient to raise a reasonable suspicion that the plaintiff might have been assisting Kei'andre Mitchell or known his whereabouts. See Tilmon, 19 F.3d at 1225 (collecting cases finding reasonable suspicion to conduct a Terry stop of a possible getaway car); Gray v. City of Hammond, Ind., 693 F. Supp. 2d 823, 836–37 (N.D. Ind. 2010) (officers had reasonable suspicion to stop a vehicle within the area where fleeing suspect was last seen to determine whether suspect was in the vehicle). The officer's initial stop of the plaintiff's car was lawful.

The defendants argue that this reasonable suspicion ripened into probable cause to detain the plaintiff after the traffic stop. They reason that the plaintiff could have been aiding and abetting the commission of a crime by driving a "getaway car" for Kei'andre Mitchell. See State v. Whiting, 136 Wis. 2d 400, 410 (Wis. Ct. App. 1987) (discussing that under Wisconsin law, driving a getaway car could support a conviction on a party-to-a-crime theory). Once officers stopped the plaintiff and saw that Kei'andre Mitchell was in the car after having abruptly fled the scene of the shooting, an objectively reasonable officer could have believed that Kei'andre Mitchell was involved in the deadly shooting and that the plaintiff was aiding and abetting him in his flight. Kei'andre Mitchell's flight from police—which appeared to be assisted by the plaintiff—was sufficient to establish probable cause for officers to detain plaintiff Mitchell for questioning. Because probable cause existed, the

19

Case 2:23-cv-00400-PP    Filed 09/18/25    Page 19 of 29    Document 34

defendants cannot be held liable on a claim for false arrest. The court will grant summary judgment for the defendants on Count I of the amended complaint.

B.   Count II: Excessive Force

   1.   *Parties' Arguments*

The defendants argue that the plaintiff's excessive force claim must fail because officers did not use force during the traffic stop. Dkt. No. 23 at 10. As with Count I, the defendants argue that defendants Stevens, Spaulding, Prybylski, Amundsen and Michael Smith were not present during the stop, so the court must dismiss any excessive force claim against them related to the stop. Id. As for the other officers, the defendants argue that absent more, pointing a firearm at a person is not an excessive use of force and is appropriate where a suspect might be armed or dangerous. Id. at 10–11 (quoting Moore v. City of Chicago, Case No. 05 C 5868, 2008 WL 516338, at *4 (N.D. Ill. Feb. 20, 2008)). The defendants contend that because Kei'andre Mitchell may have been involved in a shooting that night and may still have been armed, it was reasonable for officers to draw their weapons during the stop. Id. at 11–12.

The plaintiff responds that pointing firearms at an individual is a use of force and that the defendants provided no reason to justify their use of force on the plaintiff. Dkt. No. 30 at 14. She contends that pointing a gun at an individual who presents no danger is unreasonable. Id. (quoting Santiago v. United States, Case No. 20 C 6371, 2022 WL 375516 (N.D. Ill. Feb. 8, 2022)). The plaintiff argues that officers did not know if Kei'andre Mitchell was in the

20

car when they drew their weapons. Id. at 15. According to the plaintiff, officers only observed the plaintiff entering the car and had no reason to believe that she was armed and dangerous. Id.

The defendants dispute the plaintiff's characterization of events. Dkt. No. 31 at 10–11. They argue that officers believed Kei'andre Mitchell was in the car because they observed an unknown individual get into the car parked at an address associated with Kei'andre Mitchell. Id. at 11. They assert that it was reasonable under the circumstances for officers to suspect Kei'andre Mitchell was in the car and fleeing the earlier shooting. Id.

   2. *Analysis*

As with Count I, the undisputed facts show that defendants Stevens, Spaulding, Prybylski, Amundsen and Michael Smith were not present during the traffic stop, so they cannot be held liable for any use of force that occurred during that traffic stop. See Alejo, 328 F.3d at 936. The court will grant summary judgment in favor of defendants Stevens, Spaulding, Prybylski, Amundsen and Michael Smith on Count II.

The court analyzes an arrestee's claim for excessive force under the Fourth Amendment's reasonableness standard. Becker v. Elfreich, 821 F.3d 920, 925 (7th Cir. 2016) (citing Lawrence v. Kenosha County, 391 F.3d 837, 843 (7th Cir. 2004)). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." Gupta v. Melloh, 19 F.4th 990, 996 (7th Cir. 2021) (quoting Phillips v. Cmty. Ins. Corp.,

678 F.3d 513, 519 (7th Cir. 2012)). The court evaluates whether the officer's actions were objectively reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559 (1979). "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The Seventh Circuit has held that "gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." Baird v. Renbarger, 576 F.3d 340, 345 (7th Cir. 2009) (collecting cases). But gun pointing can be a reasonable use of force when there is "a serious potential danger to the police" or a threat of violence. Id. (collecting cases). In Williams v. City of Champaign, 524 F.3d 826, 828 (7th Cir. 2008), the Seventh Circuit held that it was reasonable for officers to draw their weapons when approaching a vehicle that may contain an armed passenger and a possible accomplice. The facts here are similar. The officers in this case believed that Kei'andre Mitchell was in the car and might be armed due to his possible involvement in the earlier shooting that resulted in a woman's death. They also believed that Kei'andre Mitchell had fled the scene and was continuing to flee. It was

22

reasonable for the officers to believe that Kei'andre Mitchell posed a potential danger to officers, so drawing their weapons and aiming them at the car was not excessive under the circumstances. The court will grant summary judgment for the defendants on Count II of the amended complaint.

C.    Count III: Unlawful Seizure and Detention After the Traffic Stop

1.    *Parties' Arguments*

The defendants argue that officers properly entered the plaintiff's home under exigent circumstances. Dkt. No. 23 at 12. They assert that officers have an obligation to care for a child where the arrest or detention of a suspect might expose that child to danger. Id. at 13 (citing White v. Rochford, 592 F.2d 381, 385 (7th Cir. 1979)). The defendants argue that after learning that the plaintiff's child was home alone, they were entitled to return to her home to arrange care for the child. Id. They contend that the child's presence was an exigent circumstance permitting a warrantless entry into the plaintiff's home. Id. The defendants also maintain that there was a concern that there could be evidence related to the shooting inside the house and that if there were other individuals present in the home, that evidence might be destroyed. Id. at 14. According to the defendants, detaining the plaintiff in her home served the dual purpose of attending to the child's needs and preventing the destruction of evidence, which also is an exigent circumstance. Id. at 14–15. The defendants argue that after entering the home, they performed a permissible protective sweep limited to confirming that there was no one else hiding in the home. Id. at 15.

The defendants next argue that they did not detain the plaintiff for an unnecessarily long time under the circumstances. Id. They assert that officers needed to secure the scene of the shooting and question the witnesses and Kei'andre Mitchell before the plaintiff could be released, resulting in the five-hour period of detention. Id. at 16. The defendants contend that officers had probable cause to detain the plaintiff for the same reasons. Id. at 16–17. They argue that a five-hour detention was reasonable as a matter of law because the plaintiff's release was not delayed for an improper purpose. Id. at 17–18. They argue that she was detained pending an investigation into a suspicious death and was detained only for the time it took officers to investigate the shooting. Id. at 18. The defendants also argue that handcuffing the plaintiff was reasonable because she exhibited combative behavior while entering the house, including pulling away from officers and yelling. Id. at 19. They contend that once the plaintiff had calmed down, officers loosened her restraints to use "doubled up" handcuffs to make her more comfortable for the rest of her detention. Id.

The plaintiff responds that although officers may have been able to enter the home to do a welfare check on her child, they should not have detained the plaintiff after they completed the welfare check. Dkt. No. 30 at 16. The plaintiff argues that officers had no evidence that Kei'andre Mitchell had entered the house, so there was no probable cause to search the house for evidence related to the shooting. Id. at 17. She asserts that officers detained her and searched her home to discover evidence justifying her arrest. Id. at 18. The plaintiff

24

argues that under the circumstances known to officers at the time, there was no reason to detain her for five hours. Id. at 19.

The defendants reply that detentions of less than forty-eight hours are presumptively reasonable and that there is no evidence to support the plaintiff's theory that officers were delaying her release to find evidence to arrest her. Dkt. No. 31 at 8–9. They also argue that just because the officers eventually chose to release the plaintiff does not negate the existence of probable cause at the time of her detention. Id. at 10.

2.    *Analysis*

The Fourth Amendment governs the plaintiff's claim that she was detained for an excessive period after the traffic stop. See Williams v. Dart, 967 F.3d 625, 632 (7th Cir. 2020) (citing Manuel v. City of Joliet, 580 U.S. 363–64 (2017)). Under the Fourth Amendment, detainees have a right to a judicial determination of probable cause to hold them within a reasonable time (often considered to be forty-eight hours) after their arrest. See generally Gerstein v. Pugh, 420 U.S. 103 (1975); Mitchell v. Doherty, 37 F.4th 1277, 1280–81 (7th Cir. 2022). The Seventh Circuit has held that "detention times ranging from three to fourteen and one-half hours [are] not constitutionally unreasonable absent any evidence that the delay in releasing the arrested individuals was motivated by an improper purpose." Ray v. City of Chicago, 629 F.3d 660, 663–64 (7th Cir. 2011) (citing Chortek v. City of Milwaukee, 356 F.3d 740, 747–48 (7th Cir. 2004)).

25

Here, the plaintiff has not established that there was any improper purpose motivating her detention. The court already has determined that officers had probable cause to stop and detain the plaintiff. Although the plaintiff speculates that officers were holding her for a long period so that they could search for evidence to justify an arrest, the body camera footage shows that after officers performed an initial sweep of the house, they waited in the living room of the home with the plaintiffs and did not conduct a further search of the house. See Dkt. No. 22-4 at Exhibit 13. Given that fact, and the fact that the detention was less than fourteen hours, the plaintiff has failed to show that her detention was unreasonably long.

The plaintiff has not argued that the defendants performed an unlawful search of her home, and the undisputed facts show that the officers' search was limited to a protective sweep or was performed with the plaintiff's consent. See Dkt. No. 29 at ¶¶56–64. Because the defendants did not perform an unlawful search or seizure of the plaintiff, the court will grant summary judgment for the defendants on Count III of the amended complaint.

 D. Count IV: K.M.'s Claim

  1. *Parties' Arguments*

The defendants argue that officers never searched K.M., requiring the court to dismiss Count IV of the amended complaint. Dkt. No. 23 at 20. They argue that officers told K.M. to sit on the sofa in the living room while officers detained the plaintiff. Id. They assert that officers never searched K.M. or handcuffed her. Id. The defendants state that K.M. was a minor and that

26

officers were trying to provide for her safety by keeping her inside the house in the middle of a cold winter night. Id.

The plaintiffs respond that K.M. was unlawfully seized in the same manner as her mother. Dkt. No. 30 at 19. They allege that the defendants did not have probable cause to arrest or detain either the plaintiff or K.M., incorporating the same arguments that they made regarding the plaintiff's arrest. Id. at 19–20.

> 2.  *Analysis*

It isn't clear from the amended complaint what claim the plaintiffs are making on behalf of K.M. Although Count IV is titled "Unlwaful [sic] Search," the factual allegations and the plaintiffs' arguments in opposition to summary judgment suggest that they are challenging officers' seizure and detention of K.M. The court will construe this claim as a Fourth Amendment claim for unlawful seizure.

The Fourth Amendment prohibits unreasonable seizures. Leaf v. Shelnutt, 400 F.3d 1070 (7th Cir. 2005) (citing California v. Hodari D., 499 U.S. 621, 624 (1991)). To determine whether K.M. was unlawfully seized, the court first must consider whether K.M. was seized at all; if so, the court then must determine whether the seizure was unreasonable. Id. "A person is seized 'only if, in view of all of the circumstances surrounding the incident, a reasonable person [in the subject's position] would have believed that he was not free to leave.'" Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)) (alterations in original).

Here, the seizure analysis is complicated by the fact that K.M. is a minor child and the purported seizure occurred in her home in the middle of the night. K.M. would not necessarily have been free to leave the home, or felt free to leave the home, under these circumstances whether or not law enforcement was present. Although the Seventh Circuit does not appear to have addressed this issue, other courts have held that if a decision to seize a child's parents was reasonable, then the related decision to detain the child is reasonable. See, e.g., Pittman v. City of New York, Case No. 14-CV-4140, 2014 WL 7399308, at *4 (E.D.N.Y. Dec. 30, 2014) ("The defendants' decision to remove [the minor child] from the car while they detained and questioned [the father] was a reasonable one, and did not violate the minor's Fourth Amendment rights."); Guerrero v. Deane, 750 F. Supp. 2d 631, 654 (E.D. Va. 2010) (granting summary judgment for the defendant after finding that "[i]n light of [the] reasonable seizures of Mr. and Mrs. Guerrero . . . the circumstances, viewed objectively, justified Officer Potes's brief seizure of the Guerrero children for their safety while the officers effected Ms. Guerrero's arrest."), aff'd sub nom. Guerrero v. Moore, 442 F. App'x. 57 (4th Cir. 2011). See also A.G. v. City of Park Ridge, 198 F. Supp. 3d 856, 861 (N.D. Ill. 2016) (stating that "taking a child to the police station with the child's parents is reasonable and makes perfect sense" but only if the parents' seizure is lawful).

Assuming that K.M. was seized by police when she was detained in the house with her mother, the seizure was not unreasonable. The court already has determined that the plaintiff's seizure was lawful. K.M. was not a suspect

28

in any unlawful activity, and there is no evidence that officers detained K.M. for any reason other than to ensure her safety while they investigated the shooting. Detaining K.M. incident to her mother's seizure—and releasing her once the plaintiff was deemed free to leave—was reasonable under the circumstances. The court will grant summary judgment for the defendant on K.M.'s unlawful seizure claim.

     E.    <u>Punitive Damages and Qualified Immunity</u>

The defendants argue in the alternative that they are protected by qualified immunity and that the plaintiffs are not entitled to punitive damages. Dkt. No. 23 at 20–23. The court need not reach these arguments because it has determined that the defendants did not commit any constitutional violations. Because the court has granted summary judgment for the defendants on all claims, the court will dismiss this case with prejudice.

## V.    Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 22.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of September, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

29